Sylvester Theodore **BURNS, Jr.**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 13–89–171–CR.

Court of Appeals of Texas, Corpus Christi.

April 18, 1991.

Rehearing Overruled May 16, 1991.

**880**

George O. Jacobs, Houston, for appellant.

Grant Jones, Dist. Atty., James Rosenkild, Asst. Dist. Atty., Corpus Christi, for appellee.

Before NYE, C.J., and BENAVIDES and HINOJOSA, JJ.

## OPINION

BENAVIDES, Justice.

On January 31, 1988, appellant, Sylvester Theodore Burns, Jr., and three other individuals, Chad Holland, Catarino Galvan, and Mark Perez, were involved in a one-car accident in which the car driven by appellant went into a spin on a freeway straightaway and rolled over three times. Perez was killed in the accident. Appellant was charged and a jury found him guilty of involuntary manslaughter and assessed punishment at seven years' confinement in the Texas Department of Corrections. By five points of error, appellant contends that the trial court erred in the admission of certain evidence, in denying him access to exculpatory witnesses, and in refusing to quash his indictment. We affirm the trial court's judgment.

Appellant was charged by an indictment which specified that he:

by accident and mistake when operating a motor vehicle while intoxicated, namely, not having the normal use of mental or physical faculties by reason of the introduction of alcohol, and a controlled substance, and a drug, and a combination of two or more of those substances into the body; and having an alcohol concentration of 0.10 or more and by reason of such intoxication, caus[ing] the death of an individual, Mark Perez.

Prior to trial, appellant filed a motion to quash the indictment on the grounds that it was unconstitutional because the grounds and offense alleged therein were void for vagueness, that the offense called for a disproportionate punishment, and that the bill enacting the law failed to give adequate notice of the bill's content, specifically, that the bill's caption was inadequate.

■ By his fifth point of error, appellant contends that the trial court erred in refusing to grant his motion to quash the indictment on the same three grounds alleged in his motion to quash. The "vagueness" and "disproportionate punishment" contentions relate to an application of TEX. CODE CRIM.PROC.ANN. art. 42.12, § 13(b) (Vernon Supp.1991), which requires anyone placed on probation upon conviction for involuntary manslaughter based upon intoxication to serve at least 120 days in jail as a condition of probation. Appellant did not get probation; appellant was sentenced to seven years' incarceration. Because appellant was assessed a penitentiary term and not granted probation, he does not have standing to attack the probation provisions of this statute. *See Nugent v. State*, 749 S.W.2d 595, 600 (Tex.App.—Corpus Christi 1988, no pet.); *Townsend v. State*, 725 S.W.2d 463, 464 (Tex.App.—Houston [1st Dist.] 1987, pet. ref'd); *Hypke v. State*, 720 S.W.2d 158, 159–60 (Tex.App.—Houston [1st Dist.] 1986, pet. ref'd).[1]

■ Finally, appellant's arguments in support of his contention that the caption of the bill fails to provide adequate notice of the bill's content and violates the Texas Constitution has been addressed by other

1. While we do not reach the merits, this court has already rejected the arguments advanced by appellant for his claim that the statute is unconstitutionally vague. *Nugent*, 749 S.W.2d at 600; *accord Townsend*, 725 S.W.2d at 464; *Hypke*, 720 S.W.2d at 160. Similarly, the attack based on a disproportionate punishment as applied to other persons accused of crimes who are eligible for probation has been rejected by other courts of appeals in Texas. *See Townsend*, 725 S.W.2d at 464; *Hypke*, 720 S.W.2d at 160.

courts of appeals in Texas and rejected. *See Townsend,* 725 S.W.2d at 464; *Hypke,* 720 S.W.2d at 160. The caption is adequate. Additionally, appellant may not challenge the sufficiency of the caption because TEX. CONST. art. III, § 35(c) makes it unlawful to declare the statute void on the basis of an insufficient title. We conclude that the trial court did not err in refusing to grant appellant's pre-trial motion to quash the indictment. Appellant's fifth point of error is overruled.

■ By his fourth point of error, appellant contends that the trial court committed reversible error by refusing to grant appellant's motion to dismiss on the grounds that the State denied appellant exculpatory evidence in the form of witnesses who would have testified that the accident could have occurred as a result of a malfunction in the automobile.

Prior to trial, appellant filed a motion for discovery of exculpatory evidence. Subsequently, the State informed appellant that two Ford Motor Company engineers were to examine appellant's car. Appellant videotaped the examination. Appellant also attempted to compel at least one of the engineers, Frederick W. King, who was in Michigan, to appear in Texas for the trial; a Michigan court denied appellant's request to compel attendance.

Appellant moved for a continuance (his sixth motion for continuance) so that he could depose King and the court denied his request. He then filed a motion to dismiss the prosecution on the grounds that the State was withholding exculpatory evidence. King had previously come to Texas at the State's request and examined appellant's automobile; appellant contended that King had exculpatory knowledge regarding his automobile. In his motion, appellant alleged that once King informed the State that he had discovered what was "highly exculpatory evidence," King became unavailable and refused to cooperate. Appellant stated that it was his belief that the State could obtain King's attendance at trial and asserted that the State was contributing to King's absence, thereby suppressing evidence. He requested that the

court dismiss the prosecution for the failure of the State to make available to appellant the use of exculpatory evidence which was in the State's control and knowledge. The trial court denied his motion.

The record of the Michigan hearing indicates that the Michigan court determined that King was not a necessary witness. Attached to the hearing record was an affidavit from King explaining that he had found nothing on the car which would have caused the accident and that he knew no reason why appellant's retained engineering expert could not gather the facts, inspect the vehicle and reach conclusions just as he had. The affidavit indicates that King did not have any exculpatory evidence. Furthermore, even if King had any exculpatory evidence, the record indicates that the State did not withhold any of King's evidence from appellant; the State informed appellant of King's tests and test results and appellant had the opportunity to and did videotape at least one of the experiments. We find no merit in the portion of appellant's point of error which complains that the State denied appellant exculpatory evidence.

Appellant also claims error in the trial court's refusal to grant his motion to depose exculpatory witnesses. However, appellant did *not* file a motion to take the depositions of the witnesses, he filed a motion for continuance so that he could have time to take the depositions of the witnesses. This was appellant's sixth motion for continuance; the first five were granted. We will address the second part of appellant's point of error as if he were complaining of the trial court's denial of his sixth motion for continuance.

■ Determination of whether to grant a motion for continuance generally lies within the sound discretion of the court. *Collier v. Poe,* 732 S.W.2d 332, 334 (Tex.Crim.App.1987). Appellant knew of King in April, 1988, and expressed interest in him in October, 1988, yet did not attempt to depose him until January, 1989, two months before trial. The record indicates that appellant did not try to depose King in Michigan but only attempted to have King

come to his attorney's office in Texas. Under the circumstances, we find no abuse of discretion on the part of the trial court in denying appellant's motion for continuance so that he could depose King. We overrule appellant's fourth point of error.

By his third point of error, appellant contends that the trial court committed reversible error in allowing a statement made by appellant while he was under arrest and in custody into evidence over his objection. Appellant relies solely on his contention that the admission of this statement violates TEX.CODE CRIM.PROC.ANN. art. 38.22, § 3 (Vernon 1991). Except for certain instances, art. 38.22, § 3 bars the admission of oral statements of an accused which are made as a result of custodial interrogation. TEX.CODE CRIM.PROC. ANN. art. 38.22, § 3(a)–(e).

A review of the specific circumstances and the content of the statement are necessary. After arriving at the scene, Officer Lewis arrested appellant and took him into custody. Later, Officer Lewis transported appellant to Memorial Hospital and then to the police station. During the time appellant was being driven to the police station, he asked Officer Lewis questions and Officer Lewis responded. According to Officer Lewis, appellant was yelling and screaming from the time he was taken from the scene of the accident until the time he got to city jail, and he was very verbally abusive and physically violent during that time.

According to Officer Lewis, appellant inquired around two dozen times what he was charged with and why he was under arrest. Officer Lewis answered that he was charged with involuntary manslaughter. Appellant then asked him why he was charged with involuntary manslaughter and Officer Lewis told him that there was a dead kid laying under the car that appellant was allegedly driving. Appellant responded, "I didn't kill that fucking Spic." Officer Lewis then stated, "Why did you want to call the boy that? He's dead; he's under the car." Appellant stated, "Because that's what he is; he is a fucking Spic, and so are you."

Article 38.22 does not bar admission of a statement that does not stem from custodial interrogation. See TEX.CODE CRIM.PROC.ANN. art. 38.22, § 5 (Vernon 1979). Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). In this case, appellant was in custody, but Officer Lewis did not initiate the questioning, appellant did. Additionally, the concept of interrogation extends to words or actions on the part of police officers which they should have known were reasonably likely to elicit an incriminating response from the suspect. Rhode Island v. Innis, 446 U.S. 291, 300–02, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980); Janecka v. State, 739 S.W.2d 813, 828 (Tex.Crim.App.1987).

Officer Lewis' question to appellant regarding why he would want to call the victim what he did was more of a rhetorical question or chastising statement than a direct question intended to elicit a response. Moreover, statutory and constitutional safeguards do not apply to statements admitted into evidence which are not confessional in nature and which do not implicate the accused in the offense involved in the prosecution. Longoria v. State, 763 S.W.2d 597, 600 (Tex.App.—Corpus Christi 1988, no pet.). Appellant's comment was neither confessional nor did it implicate appellant with regard to the involuntary manslaughter charge. The admission of the statement was not barred by art. 38.22. We find that the statement was not inadmissible under art. 38.22. Appellant's third point of error is overruled.

Also during the course of trial, the court admitted a sample of appellant's blood and the accompanying testimony regarding the results of the chemical analysis of the blood into evidence over appellant's objections to the manner in which this sample had been obtained and to the chain of custody. Appellant's pre-trial motion to suppress this evidence on the same grounds had been overruled. This blood sample and the accompanying testimony of the chemist

established that appellant's blood alcohol level exceeded the legal limit.

By his first point of error, appellant contends that the trial court reversibly erred in admitting the result of the chemical analysis of the blood sample over his objections because the blood sample was taken from his body against his will, without his consent, and by the use of physical force. En route to the hospital, appellant informed Officer Lewis that Lewis would have to fight him to get the blood sample. Upon arriving at the hospital, Officer Lewis engaged Officer Sanchez, another Corpus Christi police officer who was at the hospital on an unrelated matter, to assist him in getting appellant into one of the hospital emergency room cubicles where the blood sample could be taken. Officers Lewis and Sanchez forcibly took appellant to the cubicle while appellant cursed, resisted, and fought with the officers. The two wrestled appellant to the floor of the cubicle and a hospital lab technician, David Taruda, cleaned appellant's arm and used a syringe to take a sample of blood from appellant's arm. According to Officer Sanchez, he and appellant were not aware that the sample had been taken; appellant stated that "all I felt was a prick on my arm."

Appellant complains that the actions of the police violated his human dignity. He contends that the method in which the police obtained his blood was improper in that it violated his due process rights under the Fifth and Fourteenth Amendments of the United States Constitution. Appellant also raises a general complaint in this regard of violation of the Texas Constitution's due course of law protection. *See* TEX. CONST. art. I, § 19 (1891, amended 1918). As a general rule, there are no due process violations under the Fifth or Fourteenth Amendments or under the Texas Constitution as a result of taking of blood without consent. *See Schmerber v. California,* 384 U.S. 757, 759–765, 86 S.Ct. 1826, 1829–1833, 16 L.Ed.2d 908 (1966); *Olson v. State,* 484 S.W.2d 756 (Tex.Crim.App.1972); *McCambridge v. State,* 725 S.W.2d 418, 421–22 (Tex.App.—Houston [14th Dist.] 1987), *affirmed* 778 S.W.2d 70 (Tex.Crim.

App.1989). Whether appellant consented to the taking of his blood is of no consequence under the circumstances of this case because the taking of a blood sample without consent has no constitutional impediment. *See Schmerber,* 384 U.S. at 759–65, 86 S.Ct. at 1826–33; *Olson,* 484 S.W.2d at 771–72.

Due process concerns could arise if the police initiated the physical violence while administering the test, refused to respect a reasonable request to undergo a different form of testing, or responded to resistance with inappropriate force. *South Dakota v. Neville,* 459 U.S. 553, 559, n. 9, 103 S.Ct. 916, 920 n. 9, 74 L.Ed.2d 748 (1983); *Schmerber,* 384 U.S. at 760, n. 4, 86 S.Ct. at 1830, n. 4; *McCambridge v. State,* 712 S.W.2d 499, 504, n. 16 (Tex.Crim.App.1986). Here, however, appellant initiated the violence which preceded the drawing of his blood in the hospital. The police officers did not overreact: appellant was merely restrained after he struggled to avoid having the laboratory technician draw his blood. The actual taking of appellant's blood was done in a medically acceptable manner by a hospital laboratory technician in the hospital and was done with little noticeable pain or discomfort.

Appellant's blood was taken pursuant to TEX.REV.CIV.STAT.ANN. art. 6701*l*–5, § 3(i) (Vernon Supp.1991), which requires that a blood sample be taken in the event an individual is arrested for involuntary manslaughter which involves a death as a result of a car accident. In this case, pursuant to the statute, the police were required to take appellant's blood sample. The police did as required by statute and, in doing so, used only that appropriate force necessary to overcome the unlawful, forceful resistance initiated by appellant. We find no violation of appellant's constitutional rights in the manner in which the police took the blood sample and no error on the part of the trial court in admitting the result of the chemical analysis of the blood sample. Appellant's first point of error is overruled.

By his second point of error, appellant contends that the trial court reversibly

erred in admitting the results of the chemical analysis of the blood sample because the State did not prove a proper chain of custody sufficient to show that the integrity of the blood sample was maintained from the time it was taken from appellant until the time it was analyzed at the laboratory. At trial, the State established each person who had possession of the blood sample from the beginning of the chain until the end of the chain. Appellant nonetheless complains that these were times when the blood sample *could have been* subjected to abuse. No actual tampering is claimed and the record does not contain evidence of tampering.

Since the State showed the beginning and the end of the chain of custody, any gaps in the chain go to the weight of the evidence and not to its admissibility. *See Gallegos v. State*, 776 S.W.2d 312, 315–16 (Tex.App.—Houston [14th Dist.] 1989, no pet.). Additionally, since no issue of tampering exists, appellant's objection that the State has failed to establish the proper chain of custody goes to the weight of the evidence rather than to its admissibility. *See Bueno v. State*, 501 S.W.2d 339, 341 (Tex.Crim.App.1973). Appellant's second point of error is overruled.

We affirm the trial court's judgment.