The STATE of Ohio, Appellee,

v.

SISLER, Appellant.

[Cite as *State v. Sisler* (1995), 114 Ohio App.3d 337.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 95–CA–49.

Decided Sept. 27, 1995.

*Michael F. Sheils,* Springfield Chief Prosecutor, for appellee.

*James W. Skogstrom,* for appellant.

GRADY, Judge.

Defendant Jeffrey L. Sisler appeals from his conviction for a violation of R.C. 4511.19(A)(2), which prohibits operation of a motor vehicle by a person who "has a concentration of ten hundredths of one per cent or more by weight of alcohol in his blood." The conviction was entered on a plea of no contest, which Sisler voluntarily made after the state agreed to dismiss other charges. On appeal, Sisler argues that the trial court erred when it denied his motion to suppress evidence and his motion to dismiss the charges against him on grounds of double jeopardy.

On September 9, 1994, at approximately 4:00 p.m., officers of the Springfield Police Division stopped defendant Sisler for operating his vehicle left of center. The officers subsequently arrested Sisler on an OMVI charge, impounded his vehicle, and seized the tags from it. Sisler was transported to the Clark County Jail for a breath-alcohol test.

At the jail, Sisler fell to the floor and injured his head. Smelling salts were administered. Sisler claims that this caused an attack of asthma. That is not corroborated; however, it is undisputed that officers transported Sisler to the emergency room of Mercy Medical Center in Springfield for examination and any treatment that might be required.

At the hospital, Officer Rick L. Blackburn presented Sisler with a written form prescribed by the Bureau of Motor Vehicles, which explains the consequences of a driver's refusal to provide a sample of his blood, breath, or urine on the request of an officer after being arrested for OMVI. Officer Blackburn also read those provisions to Sisler, who was handcuffed to the bed on which he lay.

When Officer Blackburn told Sisler that he wished to have a sample of Sisler's blood withdrawn to test its alcohol content and asked Sisler if he had any objection, Sisler responded, "I don't care what the f* * * you do," repeating the statement several times. However, when a hospital technician approached Sisler to withdraw blood from his arm, Sisler began to struggle violently. The assistance of Officer Blackburn and another police officer, two hospital security officers, a physician, and a nurse was required to hold Sisler down while the technician drew blood from his arm. Several efforts to insert a needle into his veins were unsuccessful, but blood was finally drawn. The blood sample withdrawn later tested twenty-two hundredths of one per cent of alcohol.

Sisler filed a motion to suppress evidence of the blood test results, arguing that it had been withdrawn without his consent in violation of his R.C. 4511.191(D) right of refusal and in violation of his right to due process of law guaranteed by the United States and Ohio Constitutions.

The trial court heard evidence on Sisler's motion. The court found that Sisler's struggles "during the blood drawing was not due to a lack of consent or to withdrawal of consent; rather, such behavior was consistent with that displayed throughout the arrest process." Accordingly, the court overruled the motion.

Sisler also moved to dismiss the charges against him, arguing that his prosecution for OMVI was barred as double jeopardy by reason of the prior administrative suspension of his license. That motion was also overruled.

After changing his plea to one of no contest, Sisler was convicted of a single violation of R.C. 4511.19(A)(2). He has timely appealed, and now presents two assignments of error.

## FIRST ASSIGNMENT OF ERROR

"The trial court erred in overruling appellant's motion to suppress as no consent to draw blood from the appellant was established."

 R.C. 4511.191(D), the "implied consent" statute, does not create a right of refusal or expand on the constitutional guarantees afforded a criminal accused. *State v. Runnels* (1989), 56 Ohio App.3d 120, 565 N.E.2d 610.

"Rather, R.C. 4511.191(D) is a civil remedy enacted by the legislature to facilitate the administrative revocation of a driver's license where a driver arrested for driving while intoxicated refuses to submit to a blood-alcohol test. *See Hoban v. Rice* (1971), 25 Ohio St.2d 111, 54 O.O.2d 254, 267 N.E.2d 311. Compliance with the procedures outlined in R.C. 4522.292(D) is not a prerequisite to establish the admissibility of blood test results in a criminal case involving drunken driving. *State v. Stinson* (1984), 21 Ohio App.3d 14, 21 OBR 15, 486 N.E.2d 831, paragraph one of the syllabus. A blood test that does not comply with R.C. 4511.191 may still be admitted into evidence so long as a proper foundation for admission is established. *Id.;* see, also, *State v. Dress* (1982), 10 Ohio App.3d 258, 10 OBR 372, 461 N.E.2d 1312." *Id.* at 125, 565 N.E.2d at 616–617.

 Withdrawal of a sample of blood from the body of a criminal accused in order to determine its alcohol or drug content for the purpose of proving a criminal charge is a search and seizure within the meaning of the Fourth Amendment. *Schmerber v. California* (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. In the absence of a judicial warrant, the withdrawal of blood is *per se* unreasonable and illegal unless the state demonstrates an exception to the warrant requirement that renders the search reasonable under the circumstances.

■ The United States Supreme Court has frequently recognized that a warrantless search is constitutionally permissible where a valid consent to the search has been obtained. See Annotation(1974), 36 L.Ed.2d 1143. The consent operates as a waiver of the constitutional right against unreasonable searches and seizures, provided that it is voluntary. Whether the evidence on which the state relies is sufficient to demonstrate consent is a mixed question of the law and fact.

■ The trial court found that Sisler's statement that was given in response to Officer Blackburn's request to withdraw a sample of his blood, "I don't care what the f* * * you do," demonstrated Sisler's consent to the search and seizure involved. We agree. While Sisler's subsequent struggles could manifest withdrawal of the consent he had given, we are bound by the trial court's finding that his struggles were, instead, further examples of Sisler's disruptive conduct, and not a change of mind.

■ Whether Sisler gave his consent to withdraw his blood or he did not, however, the officers were nevertheless authorized to proceed to obtain a sample of Sisler's blood, given the rapid elimination of alcohol from the blood stream, the time since his arrest, and the difficulty and delay in procuring a warrant before they did so. *Schmerber v. California, supra*. In that circumstance, the only further requirements imposed on them are that the procedure be conducted in a medically acceptable manner and without the use of excessive force.

■ Sisler's blood was withdrawn in a medically acceptable manner. Though he testified at the hearing that his arm suffered extensive bruising in the process, the procedure was performed by a qualified medical technician in a hospital setting. Indeed, Sisler offered no evidence demonstrating that his blood was not withdrawn in a medically acceptable manner.

■ Sisler's motion to suppress presented not only Fourth Amendment arguments concerning the alleged lack of consent but, in addition, arguments based on the Due Process Clause of the Fourteenth Amendment. The two grounds are related, yet distinct.

"The due process guarantee protects citizens from the arbitrary or fundamentally unfair use of government power, while the search and seizure clause requires that the government engage only in reasonable searches and seizures. Obviously, a government intrusion that violates the due process guarantee (because it is arbitrary or inconsistent with fundamental notions of justice) will also violated the search and seizure clause (because it will be unreasonable). The reverse, however, is not always true." *Anchorage v. Ray* (Alaska App. 1993), 854 P.2d 740, 748.

The two constitutional provisions join to require that in any search and seizure the "means and procedures employed [must respect] relevant Fourth Amendment standards of reasonableness." *Schmerber v. California, supra,* 384 U.S. at 768, 86 S.Ct. at 1834, 16 L.Ed.2d at 918.

In *Rochin v. California* (1951), 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183, two officers broke into the apartment of a suspected drug dealer and after seeing him swallow two capsules attempted to extract them by force. When their efforts failed, the officers handcuffed Rochin and took him to a hospital. At the officers' direction, a physician forced an emetic solution through a feeding tube into Rochin's stomach, causing him to vomit out the capsules. Rochin moved to suppress that evidence. His motion was denied and he was convicted. On appeal, the Supreme Court reversed, stating:

"[W]e are compelled to conclude that the proceedings by which this conviction was obtained do more than offend some fastidious squeamishness or private sentimentalism about combatting crime too energetically. This is conduct that shocks the conscience. Illegally breaking into the privacy of the petitioner, the struggle to open his mouth and remove what was there, the forcible extraction of his stomach's contents—this course of proceeding by agents of government to obtain evidence is bound to offend even hardened sensibilities. They are methods too close to the rack and the screw to permit of constitutional differentiation." 342 U.S. at 172, 72 S.Ct. at 209–210, 96 L.Ed. at 190.

The court held that Rochin's conviction was obtained by methods that offend the Due Process Clause and ordered it reversed.

In *Breithaupt v. Abram* (1957), 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448, a driver who was injured in an accident was taken to a hospital for treatment. Believing him to be intoxicated, police officers directed a physician to withdraw a sample of his blood while he was unconscious. On appeal, the Supreme Court rejected the driver's due process claim, finding that under the circumstances the withdrawal did not offend the sense of justice on which Rochin was decided. The court observed, however, "[T]his is not to say that the * * * taking of blood under different conditions * * * may not amount to such 'brutality' as would come under the *Rochin* rule." *Id.,* 352 U.S. at 438, 77 S.Ct. at 411–412, 1 L.Ed.2d at 452. The same result was reached in *Schmerber v. California, supra,* in which the defendant had objected to the withdrawal, but in which no force was used to perform the procedure. Relying on *Breithaupt* and distinguishing *Rochin,* the court rejected the due process argument.

In *People v. Kraft* (1970), 3 Cal.App.3d 890, 84 Cal.Rptr. 280, the defendant was arrested for driving under the influence of alcohol, handcuffed, and transported by two officers to a hospital for a blood test. He refused to consent to the test. Two officers then grabbed the defendant's arms, and they fell to the floor. While

the defendant was immobilized by their weight, the officers held the defendant's left arm while a physician drew a blood sample from it with a syringe. The defendant's conviction was reversed on appeal. Acknowledging the role of the Due Process Clause laid down in *Rochin, supra,* the appellate court found that neither the Fourth Amendment nor the state's implied consent statute authorized the officers to employ the amount of force they used to conduct a search and seizure authorized by law.

Bodily intrusions to obtain evidence of crime implicate privacy considerations of the highest order. *Schmerber v. California, supra; Winston v. Lee* (1985), 470 U.S. 753, 105 S.Ct. 1611, 84 L.Ed.2d 662. A consent that is sufficient as a matter of law to waive an accused's expectations of privacy in such circumstances implies consent to the methods to be used as well. However, where the method actually employed to perform the search offends a fundamental sense of justice, the resulting due process violation is not waived by the consent that was given.

The state had a need to obtain a sample of defendant Sisler's blood to prove the charges against him. Pursuant to the implied consent statute, the state had a right to have a sample of his blood to serve that purpose. The consent which Sisler gave authorized the state to proceed to enforce its right. However, the methods the state employed to do so offend a fundamental sense of justice, notwithstanding the fact that they were also prompted by Sisler's violent resistance to the efforts of the state's officers.

The courts are frequently referred to the "carnage" resulting from driving under the influence of alcohol, and the terrible infliction of injury and loss of innocent life caused by that unthinking and reckless practice supports the characterization. However, reality is a factor in any assessment of conduct and the legal issues it presents. Here, reality indicates that Sisler's drunken state was readily evident, as the trial court's findings of fact demonstrate. A conviction for OMVI pursuant to R.C. 4511.19(A)(1) could readily be obtained without a sample of his blood. Furthermore, Sisler's violent resistance to the state's efforts to obtain the sample so frustrated the purpose of the consent he gave that it amounted to a denial for purposes of the implied consent law, which would trigger an automatic suspension of his driving privileges. Combined with the fact that Sisler's offense was complete and that he was not capable at that moment of going anywhere, particularly after the state impounded his vehicle and seized its tags, the state's need to have a sample of Sisler's blood provides scant justification for acting as it did.

It offends a fundamental sense of justice, at least as this court views that concept, that an accused who has been shackled to a hospital bed is held down by

six persons while a seventh jabs at his arm with a needle in order to withdraw his blood at the direction of the state's officers. Such conduct is beyond that supportable as a measure necessary for effective law enforcement. It is a product of a dangerous zealotry and is "too close to the rack and the screw," *Rochin v. California, supra,* 342 U.S. at 172, 72 S.Ct. at 210, 96 L.Ed. at 190, to comport with due process of law.

We find that the actions of the officers undertaken to withdraw Sisler's blood violate his right to due process of law guaranteed by the Fourteenth Amendment to the Constitution of the United States and Section 10, Article I of the Ohio Constitution. Accordingly, we hold that the trial court erred when it denied Sisler's motion to suppress the evidence obtained. Sisler's first assignment of error is, therefore, sustained.

### SECOND ASSIGNMENT OF ERROR

"The trial court erred in overruling appellants' motion to dismiss."

Sisler presents two arguments in support of this assignment:

"1. The imposition of punishment pursuant to R.C. 4511.191 (Administrative License Suspension) bars further prosecution as to do so would violate the double jeopardy clause of the Fifth and Fourteenth Amendments to the United States Constitution and Section 10 of Article I of the Ohio Constitution.

"2. R.C. 4511.19 is unconstitutional as a violation of the Eighth Amendment to the United States Constitution proportionality provisions."

The first argument is rejected on the authority of *State v. Gustafson* (1996), 76 Ohio St.3d 425, 668 N.E.2d 435. The second argument was rejected by this court in *State v. Sanders* (Sept. 29, 1995), Miami App. Nos. 95 CA 11 and 95 CA 12, unreported, 1995 WL 634371. We reject it here on the same basis.

The second assignment of error is overruled.

### Conclusion

Having found that the trial court erred when it overruled the defendant's motion to suppress evidence of the results of the tests performed on the sample of his blood that was obtained through an illegal search and seizure, we reverse his conviction and remand to the trial court for further proceedings on the OMVI charge against him.

*Judgment reversed*
*and cause remanded.*

FAIN and FREDERICK N. YOUNG, JJ., concur.