[Cite as *State v. Tackett*, 2013-Ohio-4286.]

## IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2012-A-0015** |
| DALE L. TACKETT, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2011 CR 159.

Judgment: Affirmed in part; reversed in part and remanded.

*Thomas L. Sartini*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*Edward M. Heindel*, 450 Standard Building, 1370 Ontario Street, Cleveland, OH 44113 (For Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} This is an appeal from the judgment of the Ashtabula County Court of Common Pleas. Defendant-appellant, Dale L. Tackett, appeals from his conviction and sentence on two counts of operating a motor vehicle while under the influence of alcohol (OVI), in violation of R.C. 4511.19, with a specification under R.C. 2941.1413 that he had at least five prior convictions of a similar nature within the past 20 years.

{¶2} Appellant now challenges his sentence, the sufficiency of the evidence supporting his conviction, and claims that he was denied the right to effective assistance of counsel.

{¶3} On March 26, 2011, Patrolman Chris Defina ("Defina") of the Ashtabula City Police Department was on routine patrol in the area of Main Avenue and West 58th Street in the City of Ashtabula, Ohio, when he observed appellant passing a vehicle in a no passing zone at a high rate of speed. When appellant turned into a Circle K convenience store, Defina activated his overhead lights to initiate a traffic stop. Defina approached appellant's vehicle and observed that appellant's face was flushed and that his eyes were watery and glossy. It also appeared that appellant was unable to roll down the window. Defina instructed appellant to open the door, and when appellant did so, Defina smelled the odor of alcohol emanating from appellant's person. After instructing appellant to exit the vehicle, Defina observed numerous open containers in the vehicle. Further, appellant's speech was slurred such that he could not be understood.

{¶4} Defina asked appellant to perform field sobriety tests, but appellant was not able to adequately complete them. Defina placed appellant under arrest for OVI and transported him to the Ashtabula City Police Station where he became argumentative and refused to take a breath test. Appellant was then transported to the Ashtabula County Medical Center for a blood test. While at the hospital, appellant behaved erratically, flailed around, and refused to lay still for the blood test. As a result of appellant's uncooperative behavior, four officers held him down in order for the nurse to draw his blood sample. Appellant's blood alcohol level was 0.232.

2

{¶5} On June 16, 2011, appellant was charged in a three-count indictment. Count one alleged that appellant was operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a) and R.C. 4511.19(G)(1)(d). Count two alleged that appellant was operating a motor vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(d) and R.C. 4511.19(G)(1)(d). Both counts contained a specification pursuant to R.C. 2941.1413 that appellant had previously been convicted of five or more offenses of OVI within 20 years of the underlying offenses, felonies of the fourth degree. Count three charged appellant with aggravated menacing, in violation of R.C. 2903.21(A), a felony of the fifth degree, which count was later dismissed upon motion by the state.

{¶6} The two OVI charges were tried to a jury in February 2012, and the jury found appellant guilty on both counts. On March 20, 2012, following a sentencing hearing, the court sentenced appellant to a mandatory term of 120 days in prison on the OVI counts plus a mandatory term of two years on the specification, to be served consecutively. Appellant timely appeals and advances the following assignments of error for our review:

{¶7} "[1.] The trial court erred when it sentenced Tackett to both a 120 [day] prison sentence on the underlying OVI, and a mandatory prison term of two years on the specification.

{¶8} "[2.] The conviction for the specification that Tackett had previously been convicted of five or more similar OVI offenses within twenty years was not supported by sufficient evidence.

{¶9} "[3.] Tackett was denied his right to the effective assistance of counsel guaranteed to him by Art 1, Sec 10 of the Ohio Constitution and the Sixth and Fourteenth Amendments to the United States Constitution."

{¶10} R.C. 2941.1413 requires a mandatory prison term of one, two, three, four or five years to be imposed on offenders where the indictment specifies that they have been convicted of or have pled guilty to five or more equivalent offenses within 20 years of the current offense, and the jury finds this specification to be true. Under his first assignment of error, appellant maintains that the trial court erred when it sentenced him to both a mandatory 120 day prison term on the underlying OVI offenses as well as a mandatory prison term of two years on the repeat offender specification. Appellant requests that his case be remanded to the trial court for resentencing.

{¶11} Appellant relies on this court's previous decisions in *State v. McAdams*, 11th Dist. Lake No. 2010-L-012, 2011-Ohio-157, and *State v. Stillwell*, 11th Dist. Lake No. 2006-L-010, 2007-Ohio-3190. Specifically, appellant alleges that these cases hold that it was error to impose a sentence on both the repeat offender specification and the underlying OVI offenses.

{¶12} Pursuant to R.C. 4511.19(G)(1)(d)(i) where, as here, a defendant is convicted of a specification under R.C. 2929.1413, the court is required to impose a mandatory prison term of one, two, three, four or five years in accordance with R.C. 2929.13(G)(2). In all other situations; i.e., where there is no specification of five or more convictions within 20 years, the trial court has discretion to choose between a mandatory 60-day term of local incarceration (jail, community based correctional institution, half-way house, alternative residential facility), or sentencing the defendant to a mandatory 60-day prison term. Thus, the provisions in R.C. 4511.19(G)(1)(d)(i) for

mandatory sentences on the underlying OVI charge relate only to situations that do *not* involve R.C. 2941.1413 specifications. *McAdams* at ¶13-15; *Stillwell* at ¶36; *State v. Kennedy*, 2nd Dist. Champaign No. 2011 CA 3, 2011 Ohio 4291, ¶25. If a defendant pleads guilty or is convicted of an R.C. 2941.1413 specification, the minimum prison term the judge can impose pursuant to R.C. 4511.19(G)(1)(d)(i) and R.C. 2929.13(G)(2) is one year. R.C. 2929.13(G)(2) further provides that "the offender shall serve the one-, two-, three-, four-, or five-year mandatory prison term consecutively to and prior to the prison term imposed for the underlying offense and consecutively to any other mandatory prison term imposed in relation to the offense."

{¶13} In the case before us, under R.C. 2941.1413, the trial court properly sentenced appellant to a mandatory prison term on the specification. However, as detailed above, the trial court's imposition of a 120 day sentence was in error; the minimum amount of time appellant could face for the underlying offense is one year. R.C. 2929.13(G)(2).

{¶14} Furthermore, appellant's characterization of *Stillwell* and *McAdams* is incorrect. In *Stillwell*, we held "[t]he language and interplay of R.C. 4511.19(G)(1)(d)(ii) and R.C. 2941.1413 demonstrate that the legislature specifically authorized a separate penalty for a person who has been convicted of or pleaded guilty to five or more OVI offenses within twenty years which shall be imposed *in addition to* the penalty for the underlying OVI conviction." *Stillwell,* at ¶26 (Emphasis added). Though *Stillwell* dealt with R.C. 4511.19(G)(1)(d)(ii), its analysis is equally applicable to R.C. 4511.19(G)(1)(d)(i). As for *McAdams*, there is nothing in that opinion that changes our holding in *Stillwell* or affects our holding here.

5

{¶15} Accordingly, we agree with the parties that appellant's sentence was improper and that this matter is reversed and remanded for re-sentencing with an instruction to the trial court to impose a valid sentence for the OVI in addition to whatever the trial court deems appropriate on the specification.

{¶16} Under appellant's second assignment of error, he contends that State's Exhibit A, a certified copy of a 1998 ticket for OVI and driving under suspension in Ashtabula Municipal Court case number 98 TRC 05667, did not constitute sufficient evidence of a prior judgment of conviction under Crim. R. 32(C), and therefore, the specification that he had previously been convicted of five or more OVI offenses within the last 20 years was not supported by sufficient evidence. Specifically, appellant argues that State's Exhibit A does not constitute a valid judgment because the entry was not signed by a judge nor certified until November 18, 2011. We disagree.

{¶17} Crim. R. 32(C) provides that "[a] judgment of conviction shall set forth the plea, the verdict, or findings, upon which each conviction is based, and the sentence. * * * The judge shall sign the judgment and the clerk shall enter it on the journal. A judgment is effective only when entered on the journal by the clerk."

{¶18} "[A]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trail to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). "On review for sufficiency, courts are to assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997).

6

**{¶19}** Sharon Goebel, Deputy Clerk of the Ashtabula Municipal Court, testified that State's Exhibit A satisfied the requirements of Crim.R. 32(C). Ms. Goebel testified that Exhibit A was a certified copy of a ticket in Ashtabula Municipal Court case number 98 TRC 05667 A and B. That certification was stamped and signed by Deputy Maria Rivera on November 18, 2011. The entry shows that appellant pled guilty and was found guilty by the court of OVI, and that he was sentenced to a fine and jail term with some of the sentence suspended. The entry further shows that it was entered on the docket on November 22, 2011.

**{¶20}** Originally, the municipal court judge forgot to sign the entry. The document was later signed by the judge on November 18, 2011, pursuant to a nunc pro tunc entry, effective March 31, 1999, in order to correct the oversight. Appellant maintains that the nunc pro tunc signature of the judge was not adequate because the entry was not signed until twelve years after it was originally entered. However, the fact that the document was a nunc pro tunc entry does not call into question the validity of the judgment of conviction.

**{¶21}** Crim.R. 36 states that "[c]lerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court *at any time.*" (Emphasis added). "These nunc pro tunc entries 'are limited in proper use to reflecting what the court actually decided, not what the court might or should have decided.'" *State v. Grenter*, 11th Dist. Ashtabula No. 2011-A-0013, 2011-Ohio-6003 at ¶17, quoting *State ex rel. Fogle v. Steiner*, 74 Ohio St.3d 158, 164 (1995). "'The term "clerical mistake" * * * is a type of mistake or omission mechanical in nature which is apparent on the record and which does not involve a legal decision or judgment by an attorney.'" *Oliva v. Maurer,* 8th Dist. Cuyahoga No. 60298,

7

*3, quoting *In re Merry Queen Transfer Corp.*, 266 F.Supp. 605, 607 (E.D.N.Y. 1967). "[T]he nunc pro tunc entry does not reflect a modification of an erroneous judgment but rather supplies omissions of a clerical nature which serve to have the record speak the truth." *Id.* at *4.

{¶22} In *Oliva*, the trial judge's signature was omitted from the original judgment entry. The Eighth Appellate District held that the trial judge properly signed it in a nunc pro tunc entry in order for the court's record to reflect the truth, and that the lack of the judge's signature was simply an oversight susceptible to correction. *Id.* Similarly, here, the trial judge acted within his power to correct an oversight in order to adequately reflect the record, and did not in any way modify the conviction. Nothing in the nunc pro tunc entry changed the fact that appellant appeared in court on the day in question, was convicted of OVI, and that it evidences a prior conviction within the past 20 years. Furthermore, the entry was signed before it was offered as evidence of the prior conviction. Moreover, there is no language in the applicable rules or case law suggesting that there is a time limit on the trial court's ability to enter a nunc pro tunc judgment entry in order to correct a clerical error. Accordingly, State's Exhibit A does not fall short of the requirements set forth in CrimR. 32(C) and constitutes sufficient evidence that appellant was convicted of a previous OVI offense. Appellant's second assignment of error is without merit.

{¶23} Pursuant to appellant's third assignment of error, he raises two issues. First, he contends that he was denied his right to effective assistance of counsel when trial counsel allowed the introduction into evidence of non-OVI convictions that were contained in the documents convicting appellant of OVI. Second, he argues trial

8

counsel was ineffective for failing to pursue a motion to suppress the result of a blood test that was forcibly withdrawn.

{¶24} In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court developed a two-part test to determine whether counsel's was ineffective: (1) that counsel's actions were outside the wide range of professionally competent assistance, and (2) that the defendant was prejudiced as a result of counsel action. To establish prejudice, the defendant must show a reasonable probability that the outcome would have been different. *Id.* at 694.

{¶25} Turning to the first issue under appellant's third assignment of error, both State's Exhibit A and C were offered into evidence to support the existence of appellant's prior OVI convictions. However, appellant takes issue with the fact that State's Exhibit A contains a charge for driving under an FRA suspension, and State's Exhibit C contains charges of left of center, no operator's license, and driving under an FRA suspension. Appellant maintains that those minor, non-OVI offenses should have either been redacted or a limiting instruction given before they were presented to the jury because the existence of prior non-OVI offenses is an inflammatory fact, and it is the natural tendency of a jury to find a defendant guilty based on prior misconduct rather than limiting its attention to the offense at hand. In other words, appellant argues that the jury could not have kept an open mind on appellant's guilt or innocence on the present offenses in light of the non-OVI convictions that were not relevant to the specifications. We disagree with appellant's assertions.

{¶26} As discussed previously in our recitation of the factual background, the state presented a multitude of evidence which led to appellant's conviction. Therefore, any evidence of minor traffic convictions was harmless and not prejudicial to appellant,

9

and, in view of the overwhelming other evidence, did not alter the outcome of appellant's trial. Accordingly, trial counsel was not ineffective for allowing the introduction of this evidence.

**{¶27}** Turning to the second issue under appellant's third assignment of error, appellant argues that a motion to suppress appellant's blood test results would have likely been granted because appellant was restrained with excessive force by several officers when his blood sample was drawn in violation of his rights under both the Ohio and United States Constitution.

**{¶28}** Ohio's implied consent statute, R.C. 4511.191(A)(5)(a), provides that a person arrested for one of the OVI offenses listed in that section must submit to a blood alcohol level test if requested by a law enforcement officer. If that person refuses to submit to this test, the law enforcement officer who made the request may resort to "whatever reasonable means are necessary" to ensure submission to the test. R.C. 4511.191(A)(5)(b). Here, when appellant refused to submit to either a breath or blood test, it took four officers to hold him down because he was flailing around and refused to lay still. Defina grabbed a pressure point on appellant's neck to hold him on the table, while Patrolman Hoskin held appellant's diaphragm. Patrolman Howell and Patrolman Burns held appellant's legs.

**{¶29}** In support of his argument that he was restrained with excessive force, appellant relies on the Fifth Appellate District case of *State v. Sisler*, 114 Ohio App.3d 337 (2nd Dist.1995) wherein the court discussed the issue of forcibly extracting blood samples in an OVI case with an uncooperative defendant. In *Sisler,* the court found that the defendant's due process rights were violated, even though he consented to withdrawal of blood, because he was shackled to the hospital bed and held down by six

10

persons while another person withdrew his blood after several failed attempts. *Id.* at 345. The Second Appellate District determined that such methods offended "a fundamental sense of justice, notwithstanding the fact that they were also prompted by Sisler's violent resistance to the efforts of the state's officers." *Id.* at 344.

{¶30} We note that *Sisler* was predicated on the landmark United Supreme Court case of *Schmerber v. California*, 384 U.S. 757 (1966), which stands as the seminal case involving the forced extraction of blood from an accused and provides the framework for most judicial determinations on this topic. In *Schmerber*, the Court held that blood alcohol evidence could be taken without a DUI suspect's consent and without a warrant when probable cause and exigent circumstances existed (rapid elimination of blood alcohol content by natural bodily functions). *Id.* at 770-771. However, the *Schmerber* Court emphasized that a blood draw remains subject to Fourth Amendment standards of reasonableness. *Id.* at 768. In particular, the procedure must be conducted without unreasonable force and in a medically acceptable manner. *Id.* at 771.

{¶31} Here, appellant does not contest that probable cause and exigent circumstances existed, or that his blood was not drawn in a medically acceptable manner. Rather, he contends that the actions of the officers undertaken to withdraw his blood constituted excessive force and violated his right to due process.

{¶32} In a case that followed *Schmerber*, *Graham v. Connor*, 490 U.S. 386 (1989), the United States Supreme Court clarified that claims of excessive force, such as here, are analyzed under a balancing test to determine whether the use of force in a given case is objectively reasonable. *Id.* at 395. In such cases, the nature and degree of the intrusion are balanced against the governmental interest in securing the

11

evidence. *Id.* at 396. Unfortunately, "the 'test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application.'" *Id.* quoting *Bell v. Wolfish,* 441 U.S. 520, 539 (1979). Specifically, the *Graham* Court explained that:

{¶33} "[P]roper application [of the balancing test] requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

{¶34} "When applying the objectively reasonable standard, the court should consider, among other circumstances, (a) whether the officer initiated the physical violence, (b) whether the accused was combative, uncooperative, or unruly, (c) whether the accused's conduct is an immediate threat to the officer's safety or the safety of others, (d) the size and physical strength of the accused, (e) the seriousness of the crime that the accused committed, (f) whether the officer refused the accused's reasonable request to submit to a different form of measuring the blood-alcohol level, and (g) whether the officer responded to the accused's combative resistance with inappropriate force." *State v. Mason,* Tenn. App. No. 02C-01-9310-CC-00233, 1996 Tenn. Crim App. LEXIS 163 (1996), *37.

{¶35} In light of the lack of uniformity and precision regarding the application of Fourth Amendment standards in this area, a review of some of the decisions from other jurisdictions regarding the use of force to obtain a blood specimen is helpful in determining whether the force in the instant case was objectively reasonable.

{¶36} In *State v. Ravotto*, 169 N.J. 227 (2001), the New Jersey Supreme Court held that the police used unreasonable force in obtaining the defendant's blood sample where the defendant was willing to take a breath test, was subject to mechanical restraints, voiced that he was terrified of needles, and shouted and flailed violently as the nurse drew his blood. *Id.* at 241. In *People v. Kraft*, 3 Cal. App.3d 890 (1970), one of the officers struck the defendant on the side of his cheek with a closed fist in an allegedly defensive move, then the officers placed the accused on the floor face down, applied a scissor lock on his legs, and held his arm up. The California court held that the officers used excessive force and exceeded the limits of permissible police activity. *Id.* at 900.

{¶37} To the contrary, in *McCann v. State*, 588 A.2d 1100 (Del. 1991), each time a blood draw was attempted, the defendant withdrew his arm. After the defendant attempted to bite the officer, the office applied a stun gun to the defendant's arm. The Delaware court held that the force used was reasonable and not excessive. *Id.* at 1102. In *Burns v. State*, 807 S.W. 2d 878 (Tex.Ct.App. 1991), two police officers wrestled the accused to the floor of the emergency room, allowing the lab technician to obtain a blood specimen. The Texas court, noting that the accused initiated the violence, held that he was merely restrained after struggling to avoid the blood draw and that the police officers did not overreact. *Id.* at 883. In *State v. Krause*, 484 N.W.2d. 347 (Wis.Ct.App.1992), the accused shouted vulgarities, spit at the officers, and was generally unruly. Three officers placed a pillow case over his head, tied his feet, and held his arm while a medical technician obtained the blood specimen. This restraint caused the needle to injure the accused's arm. The accused then bit his tongue and broke a tooth. Nevertheless, the Wisconsin court held that the force used to restrain the

accused was "reasonable in light of the totality of the circumstances facing the officers * * *." *Id.* at 352.

{¶**38**} In a case very similar to the instant matter, *Carleton v. People*, 170 Cal. App. 3d 1182 (1985), the defendant aggressively resisted the police officers by refusing to extend his arm. Because of the defendant's resistance, it was necessary for one of the police officers to hold him in a "carotid-restraint position, but without carotid unconsciousness" while another officer held the defendant's left arm, another his right arm, and one deputy held each leg. The California court held that the police acted reasonably and that the degree of force used was not excessive. *Id.* at 1191. Notable in the court's analysis was that none of the officers struck or physically abused the defendant. *Id.* at 1190. In another similar case, *State v. Worthington*, 138 Idaho 470 (Ida. App.2002), the defendant was "very combative," required three police officers and two nurses to hold him down, and was restrained with a belly restraint. The Court of Appeals of Idaho held that the force used by police to extract defendant's blood was reasonable and necessary and did not violate constitutional standards. *Id.* at 474.

{¶**39**} In view of the foregoing, we find that the force used by the officers in this case was objectively reasonable given the unruly and uncooperative conduct of the appellant. Appellant was unwilling to take a breath test, refused to lay down for the blood test, attempted to stand when the nurse came to draw his blood, and was flailing around. The facts support the conclusion that the officers used only the appropriate force necessary to restrain appellant, obtain the blood specimen, and to protect their own and appellant's safety. The police used force necessary to restrain an actively resisting defendant and did not strike or physically abuse him in any manner.

{¶40} Accordingly, based on the foregoing, we conclude that trial counsel was not ineffective for failing to pursue a motion to suppress the results of appellant's blood draw, since the blood specimen was not obtained through the use of excessive force. Thus, the trial court would not likely have granted a motion to suppress appellant's blood sample. Appellant's third assignment of error is without merit and is hereby overruled.

{¶41} The judgment of the Ashtabula County Court of Common Pleas is affirmed in part and reversed in part; and this case is remanded.

TIMOTHY P. CANNON, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.