[Cite as *State v. Cooper*, 2016-Ohio-3093.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                    Court of Appeals No. L-15-1083

     Appellee                                 Trial Court No. CR0201402437

v.

Heather K. Cooper                            **DECISION AND JUDGMENT**

     Appellant                                Decided:  May 20, 2016

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Tim A. Dugan, for appellant.

* * * * *

**JENSEN, P.J.**

{¶ 1} Defendant-appellant, Heather Cooper, entered a plea of no contest and was

convicted of one count of aggravated vehicular homicide, a violation of R.C.

2903.06(A)(1)(a) and (B).  On February 26, 2015, she was sentenced to a six-year prison

term, three years' postrelease control, and restitution of $13,362.06.  In this appeal,

Cooper assigns error in the trial court's December 4, 2014 judgment denying her motion to suppress the results of blood-alcohol tests performed pursuant to a waiver of search warrant that she executed while being treated in the emergency department of the University of Toledo Medical Center ("UTMC"). For the reasons that follow, we affirm the trial court judgment.

## I. Background

{¶ 2} Cooper's conviction arises from an August 8, 2014 automobile accident that she caused when she proceeded through the intersection of Schneider Road and S. Byrne Road without stopping at a stop sign. Her vehicle collided with a vehicle driven by Lucas Gloyd. Gloyd was ejected from his vehicle and died from the injuries he sustained.

{¶ 3} The path to this collision was eerily narrated by a number of calls to 9-1-1 reporting Cooper's erratic driving. The first caller saw Cooper in her red PT Cruiser, asleep at the light at the corner of Sylvania Avenue and Douglas Road. The caller observed Cooper wake up and drive toward the expressway.

{¶ 4} The second caller observed Cooper on South I-75, dozing off as she drove through a construction zone. He saw her hit six construction barrels, get off at the exit for the Anthony Wayne Trail, and almost veer off the exit ramp in the process.

{¶ 5} The third caller saw Cooper on the Anthony Wayne Trail. She described that Cooper was speeding and swerving, and had veered across three lanes of traffic.

{¶ 6} And the fourth caller, who was in the same vehicle as the third caller, followed Cooper as she turned from Glendale Avenue onto Detroit Avenue. She saw Cooper hit a pole and continue driving as smoke billowed from her car. She described that Cooper had almost hit her while on the expressway, and had hit three construction barrels. The caller followed Cooper as she turned onto Schneider Road, speeding, running over curbs, and veering on and off the road several times. She pleaded for police to get there before someone got hurt. Seconds later, the caller screamed in horror as she witnessed Cooper's car collide with Gloyd's car.

{¶ 7} According to the evidence established at the hearing on Cooper's motion to suppress, Toledo Police Officer Jacob Wescott was dispatched in response to the 9-1-1 calls that preceded the accident, but arrived on the scene after the accident. He described that Cooper was initially unconscious, but was moving around. Cooper was transported by ambulance to nearby UTMC, and Officer Wescott accompanied her. She seemed to be slipping in and out of consciousness in the ambulance and was groaning. Cooper provided her first name to emergency personnel, but was not able to provide her last name or her birthday. At around 1:30 a.m., approximately two-and-one-half hours after he had first been dispatched, Officer Wescott witnessed Cooper sign a waiver of search warrant for a blood draw. He said that Cooper was conscious at that time, and he heard another officer advise her of what was contained in the waiver.

{¶ 8} Officer John Toral was dispatched to the hospital and was charged with obtaining a blood sample. He arrived around 1:00 a.m. He received permission from one

3.

of the nurses to speak with Cooper. Officer Toral asked Cooper her name, and she responded with both her first and last name. He asked her what happened, and she responded that she had been involved in an accident. He told her that he worked for the Toledo Police and he asked her if she would voluntarily give blood for a blood kit and sign a statement of waiver of search warrant. He told her that the blood draw was voluntary, she was not under arrest, and she had the right to refuse consent without consequence. He explained to her that it was for police records, but he did not tell her the intended use of the blood kit. Because she was not under arrest, he also did not explain the provisions for implied consent. Cooper consented to the blood draw. Officer Toral and two other uniformed officers were in the room at the time she signed the waiver.

{¶ 9} Officer Toral described that Cooper was in pain, but was alert and able to answer questions. He said that because Cooper was wearing a neck brace, she had limited movement and had some difficulty signing the waiver. He was able to position the form on a clip board so she could sign it. Officer Toral was not informed that Cooper had been in and out of consciousness after the accident, and he did not inquire whether she had been administered any pain medication that could affect her ability to understand what was going on. He was in the room for 15-20 minutes. He said that she initially appeared to be in pain, but did not appear to be in pain at the time she signed the waiver. He also said that there were times she was unable to respond to him, however, she appeared to understand everything he said at all times and appeared to know exactly what she was doing when she consented to the blood draw.

4.

{¶ 10} Tammy Jaehn, a paramedic employed by UTMC's emergency department, performed the blood draw. Police officers were standing in the room with her. She did not hear the officers threaten Cooper or promise her anything. Jaehn, who was dressed in hospital scrubs, told Cooper she was going to draw her blood and Cooper said "okay." She did not appear to be in pain and she appeared to have all of her faculties. A 1:30 a.m. nursing note described Cooper as "alert and oriented times four." Jaehn explained that that means Cooper was alert and oriented to person, place, time, and events. Jaehn did not check to see if Cooper had been administered any medication.

{¶ 11} In support of her motion to suppress the results of the blood-alcohol tests, Cooper argued that police lacked probable cause because there was no indication that she or her vehicle smelled of alcohol, no field sobriety tests were performed, and there were no factors giving rise to probable cause to believe that she was under the influence of alcohol. She also argued that the waiver of search warrant was not signed knowingly, intelligently, and voluntarily because she was unable to maintain consciousness.

{¶ 12} The state argued that probable cause existed based on the eyewitness reports that Cooper appeared intoxicated and that the odor of alcohol emanated from her vehicle. It also maintained that Cooper was alert and oriented and was properly advised of her right to refuse consent, thus the waiver of search warrant was given voluntarily.

{¶ 13} The trial court was persuaded by the testimony of the officers and paramedic. It found that by the time Cooper consented to the blood draw, she was alert, oriented, communicative, and able to give her consent knowingly, intelligently, and

5.

voluntarily. It also found that even if she lacked capacity to give informed consent, the officers had reasonable grounds to believe that Cooper was operating her automobile while under the influence of alcohol, and it was proper to draw her blood whether or not she was placed under arrest. The trial court based this conclusion on the fact that Officer Wescott was dispatched to respond to the 9-1-1 calls which described the "play-by-play" of Cooper's driving. It also based its decision on the testimony of one of the callers who approached Cooper's car immediately after the accident and observed that Cooper smelled of alcohol. The court additionally reasoned that the evanescent nature of the evidence provided exigent circumstances obviating the need for a search warrant.

{¶ 14} In light of the trial court's decision denying her motion to suppress, Cooper chose to withdraw her original plea of not guilty and to enter a plea of no contest to one count of aggravated vehicular homicide. The trial court sentenced her on February 26, 2015. She timely appealed, assigning a single assignment of error for our review:

1) The Trial Court erred in denying Appellant's motion to suppress.

## II. Law and Argument

{¶ 15} Cooper argues that her consent to the blood draw was not freely and voluntarily given because (1) when she signed the waiver, her level of pain was 10 on a scale of 1-10; (2) the UTMC medical staff was not asked whether Cooper had been administered any narcotics; (3) the officers did not tell Cooper why they wanted her blood; and (4) the nurse who drew her blood was in hospital uniform, and giving consent to a medical professional for medical care cannot be viewed as consent to conduct a

6.

warrantless search. Cooper asserts that she must have been given pain medication because Officer Toral testified that she initially appeared to be in pain, but the pain appeared to subside during the approximately 20 minutes he was in the room. She suggests that the poor quality of her signature on the waiver form evidences her compromised state. Cooper also contends that she could not have given implied consent to a blood draw under R.C. 4911.191(A) because she was not unconscious and was not under arrest.

{¶ 16} The state urges that the trial court's conclusion that Cooper consented to the blood draw is supported by competent, credible evidence. It contends that the voluntariness of a search must be evaluated by the totality of the circumstances, including whether coercive police tactics were used, the extent and level of the defendant's cooperation, defendant's awareness of her ability to refuse, the defendant's custodial status, the defendant's intelligence and education, and defendant's belief that no incriminating evidence would be found. The state insists that there was no evidence of coercive police tactics, threats, or promises; to the contrary, Officer Toral asked for and received Cooper's consent, and she was informed of her right to refuse consent. The state also insists that Cooper was conscious and was alert and oriented when she signed the consent for the blood draw. It maintains that Cooper has cited no authority requiring the officers to inquire about medications affecting her comprehension and decision-making ability, and we should decline to place such a requirement on law enforcement personnel.

7.

{¶ 17} The state also contends that even if Cooper's consent was not valid, exigent circumstances justified a warrantless blood draw because there was undeniable probable cause to believe there would be evidence of a criminal act in Cooper's blood, and the statutory window for obtaining a blood draw was closing. It maintains that Cooper was receiving treatment and medication that might contaminate the results of any future testing and could lead to her release from the hospital, and the process of obtaining a warrant was complicated because the incident occurred during the late hours of a Friday evening and evidence was dissipating in her blood.

{¶ 18} Finally, the state urges that the officers acted reasonably in requesting and receiving consent from Cooper, the evidence of Cooper's intoxication was overwhelming in light of the numerous 9-1-1 calls, and her medical records are replete with references to her intoxication, including blood work conducted for medical purposes that revealed a blood-alcohol content of .299. This evidence, the state claims, was admissible. The state argues that in any event, R.C. 2903.06(A)(1)(a) does not require a chemical test of blood alcohol concentration. A conviction may be supported by observations of erratic driving, the odor of alcohol, or other evidence of impairment. When other evidence supports a finding of impairment, the suppression of evidence is moot. Here, the state urges, evidence of Cooper's intoxication was clear.

{¶ 19} "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. When the trial court considers a motion to suppress, it acts as the factfinder and is in the

8.

best position to resolve factual questions and to evaluate the credibility of witnesses. *Id.* We, therefore, must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Id.* Our role then is to independently determine, without deference to the trial court's conclusion, whether the facts satisfy the applicable legal standard. *Id.*

{¶ 20} Withdrawal of a blood sample to determine its alcohol content for the purpose of proving a criminal charge is a search and seizure within the meaning of the Fourth Amendment. *State v. Sisler*, 114 Ohio App.3d 337, 341, 683 N.E.2d 106 (2d Dist.1995), citing *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). "In the absence of a judicial warrant, the withdrawal of blood is *per se* unreasonable and illegal unless the state demonstrates an exception to the warrant requirement that renders the search reasonable under the circumstances." *Id.*

{¶ 21} "It is universally recognized that a search warrant shall not be required where a search is conducted pursuant to a voluntary consent although there is no antecedent arrest." *City of Fairfield v. Regner*, 23 Ohio App.3d 79, 84, 491 N.E.2d 333 (12th Dist.1985). Upon the request of a police officer, a suspect may voluntarily consent to a blood test to determine the concentration of alcohol in his or her blood. *Id.* at 85. "Such consent constitutes actual consent and relieves the prosecution of establishing the prerequisites of implied consent contained in R.C. 4511.191, to wit: probable cause, arrest and advice of the consequence of a refusal to submit to a test." *Id.* With regard to blood testing, the burden is on the state to demonstrate that consent was voluntarily

9.

given, and was not the result of coercion. *State v. Hatfield,* 11th Dist. Ashtabula No. 2006-A-0033. 2007-Ohio-7130, ¶ 111. "Voluntariness is a question of fact to be determined from all the circumstances." (Internal citations and quotations omitted.) *Id.*

{¶ 22} Here, we find that competent, credible evidence supports the trial court's finding that Cooper voluntarily consented to the blood draw. Officer Wescott, Officer Toral, and Jaehn all observed that Cooper was conscious, alert, oriented, and able to understand what was being asked of her at the time officers sought her consent to the blood draw. The medical records offered into evidence by the state support the witnesses' testimony. The nursing notes indicate, in pertinent part, as follows:

> 0100: Pt is alert and able to answer more questions * * *.
>
> 0130: TPD at bedside obtaining consent for blood work to be drawn. * * * Pt was able to sign consent for blood work for TPD. Pt alert and oriented x 4 * * *.

{¶ 23} Although Cooper may have been slipping in and out of consciousness while in the ambulance at approximately 11:30 p.m., it is undisputed that at 1:30 a.m., when she consented to the blood draw, she was conscious, alert, and oriented. She was clearly informed that she was not under arrest and she could refuse consent without consequence. While there was testimony that she was in pain, there was no evidence that her response to that pain rendered her unable to validly consent to the blood draw. Moreover, Cooper has cited nothing to indicate that law enforcement officials must inquire as to the administration and effect of medications when the undisputed evidence

10.

makes clear that the defendant-patient was alert and oriented to person, place, time, and events.

{¶ 24} Because the trial court's finding that Cooper voluntarily consented to the blood draw is supported by competent, credible evidence, we find no error in its decision denying Cooper's motion to suppress. We find Cooper's assignment of error not well-taken.

### III. Conclusion

{¶ 25} We find Cooper's sole assignment of error not well-taken and affirm the February 26, 2015 judgment of the Lucas County Court of Common Pleas. Cooper is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J. _____

_____
JUDGE

Stephen A. Yarbrough, J. _____

James D. Jensen, P.J. _____
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.